UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAMELA J. WILLIAMS,

    Plaintiff,

    v.

ANDREW M. SAUL,

    Defendant.

Case No.  19-cv-03603-WHO

**ORDER ON MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 17, 26

Plaintiff Pamela J. Williams ("Williams") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied Williams' claim for disability benefits.  Williams' case has been reviewed in the District Court before; it was remanded for further proceedings on a narrow issue.  But in the second decision of the Administrative Law Judge ("ALJ") denying Williams' claims for benefits, the ALJ again did not adequately address that narrow issue--she failed to ask the Vocational Expert ("VE") to reconcile the conflict between the VE's testimony that Williams was able to engage in her past relevant work as a customer service representative while needing to stand for one minute every fifteen minutes and the Dictionary of Occupational Titles ("DOT") definition of that job as "sedentary" and requiring sitting for up to two hours without changes of position.  Additionally, the ALJ improperly discounted evidence of the symptoms and pain attributed to Williams' fibromyalgia despite objective evidence demonstrating the severity of that condition and the consistent statements of Williams, her husband, and her treating physician regarding the limitations it imposed on her.  Because of these errors, I GRANT Williams' motion for summary judgment, DENY the Commissioner's cross motion, and REMAND this matter for an award of benefits.

# BACKGROUND

## I.      WORK AND MEDICAL HISTORY

### A.      Work History

Between March 1980 and December 2008, Williams worked as a customer service representative at Pac Bell, now AT&T.  Administrative Record ("AR") 178.  She worked sitting at a desk for seven and a half hours a day and half an hour walking or standing.  AR 179.  She handled 100-125 callers per day, placed customer orders, created contracts, and handled billing issues.  *Id.*  She stopped working December 31, 2008 because her office closed and offered early retirement.  AR 177.  She alleges that she became disabled as of January 2011, when she was 49 years old.  AR 169.

### B.      Treating Medical Provider Records

Williams suffers from multiple conditions, including fibromyalgia, a herniated disc, obesity, depression, sciatica, mild carpal tunnel syndrome, and pain in her feet, legs, and hip sockets.  AR 177, 675.  She first reported lower back pain to her primary treating physician, Dr. Cheung, in 1993.  AR 563.  In 1995, she reported flaring pain throughout her extremities and difficulty working on a computer while sitting.  AR 566.

In 2003, she was referred to a rheumatology specialist, Dr. Claudia S. Kuzis, who continued to be her primary rheumatology specialist through 2015.  AR 635, 1014.  Dr. Kuzis diagnosed her with fibromyalgia in 2003.  AR 637.  Dr. Kuzis noted Williams's pain while sitting or standing in 2007, "eighteen of eighteen soft tissue tender points," and "exquisite tenderness" in her hip which worsens her pain, and that she scored five out of five strength in her extremities. AR 602-603.

A lumbar spine MRI was ordered in 2003 which showed degenerative disc disease.  AR 600.  A 2007 MRI showed additional compression.  AR 584.  A 2011 MRI showed no significant change since 2007.  AR 580-581.  Williams began seeing a physiatry specialist in 2010, and began a new trial of anti-inflammatory medication, due to gastronomical intolerance of a prior medication.  AR 237.  In 2011, Dr. Kuzis noted that Williams' symptoms had not improved, despite several anti-inflammatory medications, and that she "might" benefit from corticosteroid

2

injections.  AR 642.

### C.     Treating Physician Opinions

Dr. Cheung, who first saw Williams for her lower back pain in 1993, has been her primary physician since 2000.  AR 563, 628.  In February 2012, Dr. Cheung wrote a letter stating that Williams "has been unable to sit or stand in one place longer than 15 minutes before her back starts to hurt" and that he could not "imagine a type of job she can do without making her symptoms worse."  AR 567.  On August 24, 2012, he submitted a Medical Source Statement on the severity of Williams' impairments.  AR 628-632.  Dr Cheung opined that Williams' pain was severe, that her prognosis was "poor" despite treatment "every 1-2 months," that she cannot sit nor stand for longer than two hours at a time, and that these symptoms precluded competitive work on a sustained basis.  AR 628-630.  Dr. Cheung also noted that Williams' pain cannot be relieved with medication without unacceptable side effects, namely stomach pains from the medication. AR 628, 630.  He noted that Williams needs a cane to walk or stand; when asked if there are any limitations that would affect her ability to work on a sustained basis, he marked "no stooping, no pushing, no kneeling, no pulling, and no bending."  AR 629-630.  On May 7, 2013, Dr. Cheung submitted a separate letter stating that Williams "has fibromyalgia and lower back pain since at least 2003 that has been unresponsive to the usual treatment," that she was "unable to work, having pain while sitting, standing and walking" and that he "consider[s] this to be a permanent disability."  AR 661.

### D.     Williams' Testimony

At her second hearing before the ALJ on March 13, 2018 ("2018 hearing"), Williams testified that she has pain from fibromyalgia "every day" and that her pain management medication "makes [her] stomach hurt . . . so [she] don't take it all the time because of the stomach pain along with all [her] other pain."  AR 704-706.  She stated that she does not receive injections. AR 704.  When asked about surgery, she stated that her doctors "mentioned it, but they didn't say that it would help."  AR 703-704.  She testified that sitting at a computer causes her pain and that the "pain definitely distracts [her] from being, like I normally do . . . so it would prevent [her] from doing [transactions] because [she is] focusing on it and not so much the customer that [she

3

1    has] on the phone." AR 708-710. The ALJ noted that Williams' medication reportedly makes her

2    sleepy, which Williams confirmed. AR 709. Williams also stated that when she was working, she

3    "had bad attendance because . . . [she] would work and then it would flare up and [she would]

4    have to leave and stay home. Then come back. Then [she would] have to face the attendance

5    problem on top of the pain," which was "very difficult." AR 710.

6         Williams testified that her prior job required bending over the computer and that an option

7    to stand or sit as needed would still require frequently bending over the desk to use the computer,

8    which caused her pain. AR 708-709. She did not believe that she could maintain focus, even if

9    she was provided as many standing breaks as needed, due to the number of transactions her work

10   had required. AR 708-709. During the 2018 hearing, the ALJ noted that Williams "spent most of

11   [her] time standing" and that she "wasn't standing upright by any means;" after noting that "she

12   was leaning," Williams' attorney asked her to stay where she was until the guard got her cane. AR

13   732. When asked if standing is more comfortable than sitting, Williams answered, "No, because

14   when, like when I'm standing I'm trying to relieve the pain from my back and it doesn't really go

15   away." AR 732.

16        **E.    Third Party Report**

17        William's husband, Omar Brown, submitted a third-party function report on her symptoms

18   dated March 2, 2011. AR 194-200. He stated that Williams is in constant pain throughout the

19   day, that she shows severe pain when trying to get up, and that he frequently finds her in bed when

20   he is home. AR 194. He reported that she cooks very seldom and that he brought food home

21   more often than she cooks. AR 195. Additionally, he stated that she can complete personal care

22   with difficulty, noted that she fell twice in the shower, and wrote that she is very limited in her

23   ability to do housework or cooking. *Id.* He and Williams do not have sexual relations due to the

24   pain touching her causes. *Id.* He also noted that her attention span is short, she does not follow

25   written instructions well because she gets distracted, and she does not respond well to changes in

26   routine. AR 199-200.

27        On the form Mr. Brown checked the following activities affected by Williams' conditions:

28   squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, stair climbing, memory,

United States District Court
Northern District of California

4

completing tasks, concentration, understanding and following instructions, and using her hands. AR 199.  He reiterated that he often encourages her to stay reclined based on how much pain she appears to be in.  AR 197.  Brown stated that she can stand or walk for twenty to thirty minutes before needing to rest for thirty minutes.  AR 199.  According to Brown, Williams frequently "shuts down" when her pain becomes too much and will sleep a lot to manage her pain.  AR 200.

## II.    PROCEDURAL BACKGROUND

Williams filed for disability insurance benefits ("DIB") under Title II of the Social Security Act in January 2011.  AR 13, 169-170.  Williams alleged disability due to obesity, depression, a herniated disc, fibromyalgia, sciatica, and mild carpal tunnel syndrome among other ailments.  AR 177.  Her disability claim was denied on August 5, 2011, and again on reconsideration on February 2, 2012.  AR 102-105, 108-112.

### A.    First ALJ Decision

The ALJ held a hearing on August 1, 2012, a supplemental hearing on January 17, 2013, and issued a decision denying Williams' application on April 12, 2013.  AR 27-44, 45-93, 10-21. At Step Two, the ALJ concluded that Williams had the following severe impairments: "obesity, fibromyalgia, low back pain/sciatica and mild carpal tunnel syndrome."  AR 15.  Those impairments, however, did not meet or equal a listed impairment.  Considering the evidence in the record, the ALJ concluded that Williams had an Residual Function Capacity ("RFC") to perform "light work" based on her ability to "stand and/or walk six hours in an eight-hour workday and sit for six hours in an eight-hour workday" and considering that Williams "must change positions if sitting every fifteen minutes for about one minute."  AR 17.  Based on the testimony of the VE, the ALJ concluded that Williams could perform her past job of customer service representative both as it was actually performed and as it was performed in the general economy.  AR 20-21. The Appeals Council denied review on April 23, 2014.  AR 1-5.

### B.    First Review by District Court

Williams filed an action in the Northern District of California seeking review of that denial.  Case No. 14-cv-02924-MEJ.  On April 19, 2017, Magistrate Judge James issued an order on the parties' motions for summary judgment, addressing the only argument the parties

contested:  whether the ALJ erred at Step Four in finding that Williams "could perform the job of customer service representative as she had actually performed it; and that Plaintiff could perform the job of a customer service representative as it was performed in the general economy."  April 2017 Order, Dkt. No. 21 Case No. 14-cv-2924 at 7.

Judge James first concluded that the ALJ erred because "there is no evidence in the record that would allow the ALJ to find Plaintiff actually performed her customer service position while seated for only 6 hours in an 8-hour day" where plaintiff testified she sat between 7.5 and 8 hours a day.  *Id*. at 7-8.  Judge James next concluded that the ALJ's determination that Williams could perform her prior occupation as a customer service representative as it is generally performed in the national economy was not supported by substantial evidence.  *Id*. at 8-13.  As Judge James explained, the ALJ's RFC finding that Williams' "must change positions if sitting every fifteen minutes for about one minute," conflicts with the DOT's definition of sedentary work that the worker must sit uninterrupted for two hours at a time.  April 2017 Order at 10-11 (citing Social Security Rulings 96-9p & 83-12).  Judge James was not satisfied with the VE's testimony about his "belief" that customer service workers could perform the job while standing during the one minute position change by using headsets and had the option to sit or stand "at will" because it was "too brief and speculative" since that testimony neither acknowledged nor addressed the conflict with the DOT's definition of a sedentary position.  *Id*. at 11-12.[1]

As a result, Judge James remanded the case for further proceedings to consider "including but not limited to the issue of whether an individual who must stand one minute out of every fifteen and who can only sit for six hours in a work day can perform the work of a customer service representative."  *Id*. at 14.

### C.    Proceedings on Remand

This matter was remanded by the Appeals Council to the ALJ on June 26, 2017.  AR 735-738.  The ALJ held a new hearing on March 13, 2018, where a different VE, Alina Sala, and

---

[1] Judge James also rejected plaintiff's argument that the ALJ erred because she did not ask the VE whether an individual could work as a customer service representative if she were away from her workstation for 1.5 hours per day.  *Id*. at 13.

Williams testified.  AR 697-734.

The VE identified Williams' past relevant work as a Customer Service Representative, a sedentary, skilled job (DOT #239.362-014).  AR 713.  The ALJ asked the VE to consider a hypothetical fifty-five year old worker who can:  lift ten pounds frequently and twenty pounds occasionally; stand or walk for six hours in an eight hour day; sit for six hours in an eight hour day; frequently use hands for handling and fingering activity; and needing to change positions, if sitting, every fifteen minutes for one minute at a time.  AR 713-714.  The ALJ specified that the one minute standing every fifteen minutes could be spent working.  AR 714.  Based on that hypothetical, the VE testified that under the DOT Williams could perform her past work as generally performed in the national economy.  AR 714-717.

Turning to the question of how Williams actually performed her job, the VE noted Williams was primarily sitting in her past work seven and a half hours a day, before going on to say the hypothetical worker could perform the job as Williams performed it.  *Id.*  After the ALJ pointed out that seven and a half hours in a day would exceed the six hours sitting in a workday used in the ALJ's hypothetical, and when specifically asked to assume the worker is required to sit for seven and a half hours out of eight, the VE said the hypothetical worker could not be able to sustain that amount of sitting.  AR 715.

When asked by the ALJ, the VE confirmed that the DOT does not provide a description of the number of hours an individual sits or stands as generally performed by a Customer Service Representative.  *Id.*  When asked how the job is generally performed in the national economy, relying on her experience, the VE stated that sitting for six out of eight hours is "pretty standard." AR 716.  The VE stated that it was her professional conclusion that the hypothetical person could sustain the work of a customer service representative as generally performed, but not as performed by Williams given the amount she sat.  AR 716-717.

The VE was then asked to consider a hypothetical worker that can only sit for two out of eight hours, stand and walk for two out of eight hours, rarely lift less than ten pounds, and occasionally use her hands for fingering and handling.  AR 717-718.  The VE stated such a person would not meet the definition of sedentary work and such a person would have no transferable

1    skills.  AR 717-719.

2          Williams' counsel then asked the VE to consider a customer service representative who

3    could sit six out of eight hours but who had to stand one minute every fifteen minutes and whether

4    that person would have to "bend down" to continue to work on the computer during that minute.

5    AR 722-723.  The VE initially stated the worker "wouldn't necessarily" have to be working on a

6    computer during that one minute, but if she did have to work during that one minute the VE could

7    not give a definite answer as the ability to work would depend on the individual's workstation (for

8    example, a workstation that would allow the individual to avoid bending over while taking the

9    standing break).  AR 723.  The VE asserted that "generally speaking, an individual could still

10   work if they had to stand one minute out of 15 minutes," but it might be reasonable there would be

11   some bending involved.  AR 724.  When asked to consider a worker who could not continue to

12   work during that one minute of standing, the VE opined the worker would be considered "off

13   task" too often, and such a person could not sustain adequate performance.  AR 724-725.

14         The ALJ asked the VE to consider a customer service representative who could sit for six

15   out of eight hours, with one minute every fifteen spent standing, and with the use of a cane.  AR

16   726.  The VE stated such a worker could perform the work of a customer service representative.

17   AR 726.

18         Williams' counsel asked, under the same hypothetical, whether a worker during the one

19   minute standing period would be limited in their ability to type information onto a computer while

20   standing on a call if she had to use one hand for a cane.  AR 727-728.  The VE stated that the use

21   of a cane would impact that worker's ability to stay on task, unless that worker was on the phone

22   and did not need to type during that minute.  AR 728.  The ALJ asked the VE if she knew of any

23   percentages that break down the amount of time a customer service representative is on the phone

24   versus typing; the VE explained every job is a little bit different and answering that question

25   would require a specific job analysis.  AR 729.

26         **D.    Second ALJ Decision**

27         On May 9, 2018, the ALJ denied Williams' application for disability benefits.  AR 670-

28   690.  At Step One, the ALJ determined that Williams "did not engage in substantial gainful

United States District Court
Northern District of California

activity during the period from her alleged onset date of January 24, 2011 through her date last insured of December 31, 2014." AR 675. At Step Two, the ALJ found that Williams "had the following severe impairments: obesity, fibromyalgia, herniated disc at L4-5 based on diagnostic imaging from June of 2007, and mild carpal tunnel syndrome." *Id.* At Step Three, the ALJ found that through the date last insured, Williams "did not have an impairment that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." AR 678.

The ALJ then "considered all symptoms . . . with the objective medical evidence and other evidence," to determine that Williams had the same RFC as in her prior decision:

> [L]ight work as defined in 20 CFR 404.1567(b) specifically as follows: the claimant can lift and carry twenty pounds occasionally and ten pounds frequently; the claimant can stand and/or walk six hours in an eight-hour workday and sit for six hours in an eight-hour workday; the claimant cannot climb ladders, ropes and scaffolds; the claimant can perform all other postural activity occasionally; the claimant can frequently perform fine and gross manipulation; the claimant must change positions if sitting each fifteen minutes for about one minute; the claimant cannot work around hazards such as unprotected heights and dangerous machinery and the claimant must avoid concentrated exposure to cold temperatures.

AR 679; *see also* AR 17. The ALJ, again, gave little weight to the limitation opinions of Williams' treating physician, Dr. Cheung, because his opinions were not supported by the objective evidence and were inconsistent with the record "as a whole." AR 682. The ALJ stated that Dr. Cheung did not explain the "specific functional limitations" that prevented the claimant from working nor provide "objective clinical or diagnostic findings that support his functional assessment." AR 683. The ALJ specifically rejected Dr. Cheung's 2013 determination that Williams was unable to work, has pain while sitting, standing, and walking, and that these conditions were considered by Dr. Cheung as a permanent disability. AR 683. The ALJ considered this conclusion to have "no probative value" because the "treatment notes contain no objective information to support this assessment" and that the issue of disability determination is reserved for the ALJ. AR 683.[2]

---

[2] The ALJ gave significant weight to the 2011 examination of the orthopedic consultative examiner Dr. Salamacha (who made mostly "unremarkable" findings), and consultative reviewers

United States District Court
Northern District of California

1    The ALJ also discounted the subjective testimony of Williams because the alleged severity

2    of her symptoms and limitations are "greater than expected in light of the objective evidence" and

3    because of the "lack of more aggressive treatment, surgical intervention or even a referral to a

4    specialist." AR 680.  The ALJ relied on Williams' function report, noting that she indicated that

5    she was in constant pain but also able to prepare simple meals, do light housekeeping, able to

6    drive, and shop.  *Id.*  The ALJ considered these daily activities, as well as Williams' consistently

7    conservative treatments, to conclude the claimant was more active and capable than alleged.  AR

8    680-681.  While her activities were "somewhat limited," the ALJ considered the ability to conduct

9    these daily activities as inconsistent with an incapacitating condition.  *Id.*

10    Similarly, the ALJ found that the testimony of Williams' husband was not "persuasive to

11    the extent his statements [were] inconsistent with the residual functional capacity assessment

12    herein."  AR 680.  The ALJ determined that "the opinion of the claimant's husband is not an

13    unbiased one because she has a familial motivation to support the claimant as well as a financial

14    interest in seeing the claimant receive benefits in order to increase the household income since the

15    claimant was living with her at the time she completed this form."  *Id.*  The ALJ then concluded

16    that, "[m]ost importantly, [Mr. Brown's] statements are not supported by the clinical or diagnostic

17    evidence."  *Id.*

18    The ALJ determined that Williams was capable of performing her past relevant work as a

19    customer service representative and that the work-related activities were not precluded by her

20    RFC.  AR 683.  The ALJ accorded significant weight to the VE's testimony that an individual

21    with Williams' RFC could perform this position as "generally performed in the national economy,

22    but not as actually performed by the claimant."  AR 684.  Citing Social Security Ruling 00-4p, the

23    ALJ determined that the VE's testimony was consistent with the information provided in the DOT,

24    "except for the apparent conflict regarding the sit/stand option."  AR 684.  However, the ALJ

25    determined that "a reasonable explanation" for that discrepancy was explained by the VE's

26

27    Dr. Ikawa, Dr. Nasrabadi, and Dr. Reddy, as those opinions were "generally consistent" in
      determining Williams could perform "light" work.  AR 681-682.  The ALJ gave little weight to
28    the 2017 consultative examination by Dr. Sharma, finding extensive tenderness on examination,
      because it was conducted after the alleged onset date.  AR 682.

1    "research and work experience."  *Id.*  The ALJ found that this was a reasonable basis to accept the

2    VE's opinion.  *Id*.  As a result, the ALJ found that Williams was not disabled as defined in the

3    Social Security Act.  *Id.*

4        The Appeals Council denied review on May 2, 2019.  AR 662-669.  Williams appealed

5    that second denial on June 20, 2019, and the case was assigned to me.

6                                    **LEGAL STANDARD**

7    **I.    STANDARD OF REVIEW**

8        Under 42 U.S.C. § 405(g), a court reviews the ALJ's decision to determine whether the

9    ALJ's findings are supported by substantial evidence and free of legal error.  *Smolen v. Chater,* 80

10   F.3d 1273, 1279 (9th Cir.1996); *see also DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991)

11   ("We review the ALJ's determination ... to determine whether it was supported by substantial

12   evidence and whether it was based on the proper legal standard.").  Substantial evidence means

13   "'more than a mere scintilla,' but less than a preponderance."  *See Saelee v. Chater,* 94 F.3d 520,

14   521–22 (9th Cir. 1996) (internal quotations and citation omitted).  Substantial evidence is "such

15   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

16   *See Richardson v. Perales,* 402 U.S. 389 (1971) (internal quotations and citation omitted).

17       A court must review the record as a whole and consider adverse as well as supporting

18   evidence.  *See Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006).  Where evidence is

19   susceptible to more than one rational interpretation, the ALJ's decision must be upheld.

20   *See Morgan v. Comm'r of the Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).  "However, a

21   reviewing court must consider the entire record as a whole and may not affirm simply by isolating

22   a 'specific quantum of supporting evidence.'"  *See Robbins,* 466 F.3d at 882 (internal quotations

23   and citation omitted); *see also Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007).  If the legal error

24   is harmless, then a reversal is unwarranted.  *See Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir.

25   2012) ("We may not reverse an ALJ's decision on account of an error that is harmless.").  An error

26   is harmless when it is "inconsequential to the ultimate nondisability determination."  *Molina,* 674

27   F.3d at 1115 (internal quotations and citation omitted).

28

United States District Court
Northern District of California

## II.    DISABILITY DETERMINATION

A claimant is "disabled" as defined by the Social Security Act if:  (i) "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (ii) the impairment is "of such severity that he not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)–(B); *Hill v. Astrue,* 698 F.3d 1153, 1159 (9th Cir. 2012).  To determine whether a claimant is disabled, an ALJ engages in a five-step sequential analysis as required under 20 C.F.R § 404.1520(a)(4)(i)–(v).

In the first two steps of the evaluation, the ALJ must determine whether (i) the claimant is not performing substantial gainful activity, and (ii) is under a "severe" impairment. *Id.* § 416.920(a)(4)(i)–(ii).  An impairment must have lasted or be expected to last 12 months in order to be considered severe. *Id.* § 404.1509.  In the third step, the ALJ must determine whether the impairment meets or medically equals a listed impairment described in the administrative regulations. *Id.* § 416.920(a)(4)(iii).  If the claimant's impairment does not meet or equal one of the listed impairments, before proceeding to the fourth step, the ALJ has to make a residual functional capacity determination based on all the evidence in the record; this determination is used to evaluate the claimant's work capacity for steps four and five. *Id.* § 416.920(e).  In step four, the ALJ must determine whether the claimant is capable of performing his or her previous job. *Id.* § 416.920(a)(4)(iv).  The claimant bears the burden to prove steps one through four, as "[a]t all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007)

Once the claimant has established a prima facie case, the burden shifts to the Commissioner to show at the fifth step that the claimant is able to do other work, and that there are significant number of jobs in the national economy that the claimant can do. *Parra*, 481 F.3d at 746; 20 C.F.R. §§ 416.920(a)(4)(v),(g); 416.960(c).  There are two ways for the Commissioner to show other jobs in significant numbers in the national economy:  (i) by the testimony of a

1    vocational expert or (ii) by reference to the Medical–Vocational Guidelines at 20 C.F.R., part 404,

2    subpart P, app. 2.  *See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).  If the Commissioner

3    meets the burden at step five, the claimant is not disabled.  *Tacket,* 180 F.3d at 1099; 20 C.F.R. §

4    404.1520(f).

5                                          **DISCUSSION**

6    **I.    APPOINTMENT OF THE ALJ**

7            Williams' first argument is that under *Lucia v. Securities and Exchange Comm'n*, 138 S.

8    Ct. 2044 (2018), the ALJ was not properly appointed under the U.S. Constitution and therefore

9    lacked authority to hear and decide her case.[3]  Because the ALJ was not properly appointed under

10   the Constitution, Williams argues that she did not have legal authority to preside over this matter.

11   Mot. at 7.  Williams notes that the SSA has conceded that some of its ALJs were not properly

12   appointed and are subject to challenges under the Constitution's Appointment Clause,[4] and the

13   Commissioner does not dispute that the ALJ in this case was not properly appointed.  *Id*. at 7-8.

14           That said, the Supreme Court stated in *Lucia* that this type of constitutional challenge must

15   be timely made, and if timely raised the appropriate remedy is to provide a new hearing before a

16   different ALJ that is properly appointed.  *Lucia*, 138 S. Ct. at 2055 ("This Court has held that one

17   who makes a *timely* challenge to the constitutional validity of the appointment of an officer who

18   adjudicates his case is entitled to relief." (emphasis added; internal quotations and citation

19   omitted)).  Williams admits that she did not raise this issue at the administrative level.  Mot. at 8.

20           The Commissioner argues that Williams' failure to raise this issue means that this

21   challenge is not timely under *Lucia* and has been waived.  Cross Mot. at 3.  Numerous opinions in

22   this District agree; a Social Security claimant's failure to raise the appointments issue at the

23   administrative level means that challenge has been waived.  *See, e.g.*, *Allen v. Berryhill*, 17-CV-

24   _____

25   [3] In *Lucia*, the Supreme Court held that ALJ's of the Securities and Exchange Commission
     ("SEC") are "'Officers of the United States,' subject to the Appointments Clause" of the U.S.

26   Constitution, and therefore may be appointed only by the President, a court of law, or a head of
     department.  *Id*. at 2051, 2055.  Therefore, the ALJ at issue in *Lucia*, who had been retained by

27   SEC staff, was not properly appointed by the SEC.  *Lucia*, 138 S. Ct. at 2055.

28   [4] *See* Memo from the Sol. Gen. To Agency Gen. Counsels After Lucia; Social Security Ruling
     1901 (SSR 19-1p).

                                                13

03414-HSH, 2019 WL 1438845, at *13 (N.D. Cal. Mar. 31, 2019); *Samuels v. Commr. of Soc. Sec.*, 18-CV-01872-VKD, 2019 WL 4479534, at *4 (N.D. Cal. Sept. 18, 2019); *Camili v Berryhill*, No. 18 -cv-06322-JSC, 2019 WL 3412921 at *13; Allen, 2019; *James A. v. Saul*, 19-CV-00104-TSH, 2019 WL 4600940, at *15 (N.D. Cal. Sept. 23, 2019). Williams does not distinguish her case from the uniform holding of these cases or otherwise argue why I should depart from their persuasive analyses finding waiver in similar circumstances. Williams has forfeited this argument by failing to raise it at the administrative level.

## II.     ALJ STEP FOUR FINDING

Williams argues that the ALJ erred, again, in concluding that Williams could perform her past work as a customer service representative as generally performed in light of the ALJ's RFC determinations. Williams alleges that the ALJ's Step Four finding was not supported by substantial evidence: the VE's testimony failed to adequately reconcile the inconsistency with the DOT description of a customer service representative as sedentary with Williams' required sit/stand option. Mot. at 11. Williams argues, as Judge James recognized in her March 2017 Order, that Social Security Rulings 96-9p and 83-12 define sedentary work as generally requiring two-hour intervals of uninterrupted sitting. Despite the matter having been remanded to resolve this exact conflict, Williams argues that the VE's testimony in March 2018 failed to address the conflict and failed to identify any data, evidence, or relevant experience of the VE to support her opinions. Mot. at 12-14.

On remand, the ALJ first determined that Williams had the same RFC as in her first decision--namely, that Williams was able to stand and/or walk six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and that she must change positions if sitting each fifteen minutes for about one minute. AR 679. The ALJ purportedly relied on the VE's testimony from the March 2018 hearing to establish that a worker with those limitations would be able to perform Williams' past relevant work as a customer service representative as generally performed. AR 684. The ALJ also determined that the VE's testimony was consistent with the DOT's

United States District Court
Northern District of California

1  definition of sedentary work,[5] relying on the VE's "research and work experience," despite the

2  apparent conflict presented by the required sit/stand option." *Id*.

3       During the March 2018 hearing, the ALJ asked the VE whether a hypothetical person who

4  could sit for six hours but would need to change positions for one minute every fifteen minutes

5  could perform the work of a customer service representative as generally performed.  AR 715-717.

6  The VE confirmed that the hypothetical worker could perform that job.  *Id*.  However, the VE was

7  never asked to address the discrepancy between the DOT definition of sedentary work (as further

8  defined by Social Security Rulings) and the need to exercise a sit/stand option every fifteen

9  minutes for one minute at a time.  Moreover, when directed to focus on whether this hypothetical

10  person could perform the customer service representative job with the sit/stand option every

11  fifteen minutes and continue working on a computer (as the DOT arguably contemplates), the VE

12  was equivocal.  AR 722-724.  The VE recognized that it would be "very difficult" to say

13  specifically whether that hypothetical worker could continue to work as it would "depend" on the

14  individual's workstation.  AR 724.  Instead, she opined that "generally speaking, an individual

15  could still work if they had to stand one minute out of 15 minutes," depending on their

16  workstation and the demands of that specific job (for example, if the worker could be solely on the

17  phone and not typing on a computer during the one minute standing).  AR 723-724.[6]  When asked

18  to consider a worker who could not continue to work during that one minute of standing, the VE

19  opined that the worker would be considered "off task" too often, and such a person could not

20  sustain adequate performance.  AR 724-725.

21       The Commissioner argues that the ALJ was entitled to rely on the VE's somewhat

22  equivocal testimony because where the "VE's recognized expertise provides the necessary

23

24  ───────────────

[5] As Judge James noted, Social Security Rulings have interpreted the DOT definition of sedentary
25  to require individuals to remain seated except for breaks occurring at 2-hour intervals and
recognized that a need to alternate sitting by standing more frequently "may erode" the range of
26  work.  April 2017 Order at 9-10.

27  [6] When the ALJ asked the VE about her knowledge of the specific percentages of time when
customer service representatives would be "on the phone versus typing," the VE responded that
28  "every job is a little different," she didn't know any percentages, and the answer would require the
analysis of a specific job as opposed to the category of consumer service representatives.  AR 729.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  foundation" then "no additional foundation is required."  Cross Mot.  at 8 (quoting *Bayliss v.*

2  *Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)).  The Commissioner also contends that in her

3  motion, Williams does not identify an "actual conflict" that was not resolved by the ALJ or VE,

4  and therefore, the ALJ's "failure" to ask the VE about what Judge James identified as a conflict

5  between the DOT and William's need for the sit/stand option for the sedentary customer service

6  position is harmless.  *Id.*

7          The Commissioner is wrong.  Williams has identified an actual conflict, the same conflict

8  that Judge James identified:  the DOT defines sedentary work as requiring 2 hours of sitting with

9  normal breaks to accommodate changes of position, yet the RFC adopted by the ALJ also required

10 the sit/stand change of positions for one minute every fifteen minutes.  The ALJ, on remand, did

11 not ask the VE to specifically address *that* conflict.  Instead, the ALJ posed a hypothetical

12 question that led to an equivocal answer that it would be "very difficult" to resolve on a

13 categorical basis and would depend on an individual's workstation and potentially the specifics of

14 an individual customer service representative job.  AR 724.  The ALJ, in relying on the VE's

15 testimony, failed to "definitively explain" the conflict between the DOT's definition of sedentary

16 work and the required sit/stand option.  *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (the

17 ALJ erred in relying on the DOT job description that conflicted with claimant's limitation because

18 neither the ALJ nor VE addressed the impact that claimant's illiteracy had on her ability to find

19 and perform a similar job).

20         Moreover, while a VE's testimony may contradict the DOT, the ALJ may rely on that

21 testimony "only insofar as the record contains persuasive evidence to support the deviation."

22 *Saccomano v. Saul*, 18-CV-02624-JCS, 2019 WL 4751888, at *16 (N.D. Cal. Sept. 30, 2019) (VE

23 testimony that relied on personal observations of the job performed,  without further explanation

24 of the bases for those observations or inquiry by the ALJ into the bases for those opinions, did not

25 amount to persuasive evidence to support a deviation from the DOT) (citing *Johnson v. Shalala,*

26 60 F.3d 1428, 1435 (9th Cir. 1995)).[7]  Here, the ALJ did not establish any context – in other words

27

28 ───────────────
   [7] *See, e.g.*, *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("We make explicit here that an
   ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record

1    the specific experience or research the VE had or was relying on – for the VE to be able to

2    persuasively opine that the customer service representative position could be "generally"

3    performed with Williams' sit/stand limitation, or why the ALJ could draw inferences from the

4    VE's general testimony.

5         As was the case before Judge James, all this record has is the VE's speculative and

6    conclusory assertions that as generally performed the customer service representation position

7    could possibly accommodate Williams' accepted limitations.  *Light v Social Sec. Admin*, 119 F.3d

8    789, 793 (9th Cir. 1997) (reversed and remanded because the ALJ erred in relying on VE

9    testimony that contradicted the DOT without "persuasive evidence in the record to support the

10   deviation").  The Commissioner points only to the VE's unsupported opinion that a worker who

11   could sit for six out of eight hours, with one minute every fifteen standing *while* working and with

12   the use of a cane, would have the past relevant work available as generally performed in the

13   national economy.  AR 726.

14        Not only is that opinion made without recognition of the DOT conflict or any basis to

15   explain that conflict, but this one statement also ignores the surrounding testimony.  Williams'

16   counsel asked the VE to consider a worker who could sit six out of eight hours and who continued

17   to work during the one minute out of fifteen, with a cane, and had to use both a computer and a

18   headset phone while standing.  AR 727-728.  The VE stated that it would be difficult to say if that

19   person could perform as a customer service representative.  AR 723.  The answer would depend

20   on the individual's workstation, to avoid bending over, and that if the worker was unable to work

21   during that one minute because she had one hand occupied with a cane and had to use the

22   computer while on the phone, she would be considered "off task" too often.  AR 724, 728.

23        The VE opined that the worker would only be able to work for that one minute out of

24   every fifteen *if* she were only on the phone and did not have to use a computer or write.  AR 728.

25   That ignores the DOT's description of the job of customer service representative:

26   _____

27   contains persuasive evidence to support the deviation. Here, there was persuasive testimony of
     available job categories in the local rather than the national market, and testimony matching the
28   specific requirements of a designated occupation with the specific abilities and limitations of the
     claimant.").

United States District Court
Northern District of California

1
2
3
4

> Interviews applicants and records interview information into computer for water, gas electric, telephone, or cable television system service; Talks with customers by phone or in person and receives orders for installation, turn-on, discontinuance, or change in service. *Fills out contract forms, determines charges for service requested, collects deposits, prepares change of address records, and issues discontinuance orders, using computer.*

5   Employment and Training Admin., Dep't of Labor, Dictionary of Occupational Titles, DICOT

6   239.362-014, Customer Service Representative (1991) (emphasis added).  The VE did not provide

7   any context or explanation for when or how often in her experience a customer service

8   representative could be expected to avoid the use of computer while standing and yet still be

9   considered to be on task given the description of the DOT.  AR 729.  The ALJ noted Williams'

10  inability to stand unassisted and inquired into her ability to focus from the pain of standing, yet

11  failed to reconcile this and other relevant testimony prompted by Williams' attorney.  AR 727-

12  728, 732.

13         In sum, the ALJ did not address the conflict between the DOT and Williams' limitations

14  with the VE.  The ALJ did not draw out any context or other evidence from the VE to support a

15  determination that Williams could perform the job of a customer service representative given her

16  sit/stand limitation, much less how Williams could perform the job given the uncontradicted

17  evidence that she had to use a cane when standing.  *See Massachi v. Astrue*, 486 F.3d 1149, 1153-

18  54 (9th Cir. 2007) (reversing and remanding where ALJ failed to ask the VE whether their

19  testimony conflicted with the DOT and whether there was reasonable explanation for the conflict);

20  *see also Edwards v. Astrue*, 4:12-CV-02056-KAW, 2013 WL 1891764, at *7 (N.D. Cal. May 6,

21  2013) (collecting cases from this district that have found reversible error where the VE did not

22  sufficiently explain the conflict between a plaintiff's need for a sit/ stand option where the DOT

23  description did not explicitly provide for a sit/stand option).[8]  The ALJ's Step Four determination

24  was not based on substantial evidence and was not harmless error.

25

26  [8] *See also Edwards v. Astrue*, 2013 WL 1891764, at *9 (finding reversible error where "VE stated, 'I do think they allow the use of a stool to sit ... in many such settings.' AR 52. He did not

27  explicitly state that he actually knew that the jobs provided a sit/stand option. Nor did he explain why he thought that half of the jobs did provide a sit/stand option, or explain what data or

28  evidence his opinion was based on. By using the word 'think,' the VE implied that his opinion regarding the sit/stand option was nothing more than guesswork or speculation.").

United States District Court
Northern District of California

1    Given that this case has been already been remanded once on this same issue, the question

2  is, what is the appropriate remedy?  The Commissioner notes that "in cases where the testimony of

3  the vocational expert has failed to address a claimant's limitations as established by improperly

4  discredited evidence, we consistently have remanded for further proceedings rather than payment

5  of benefits."  *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).[9]  But this situation is

6  different.  There is consistent agreement on Williams' limitations.  Judge James explicitly gave the

7  Commissioner the opportunity to address a specific conflict between the DOT and the need for

8  Williams' sit/stand option, but the ALJ again failed to ask the VE to address it.  In this unique and

9  hopefully rare circumstance, remand for an award of benefits is appropriate.  That conclusion is

10  supported and strengthened, as discussed below, when I credit as true the improperly rejected

11  opinions of Dr. Cheung.

12  **III.    TREATING PHYSICIAN CHEUNG'S OPINIONS**

13    Williams argues that the ALJ failed to provide "clear and convincing reasons" to reject  Dr.

14  Cheung's 2012 and 2013 opinions that Williams was significantly limited by her fibromyalgia and

15  back pain, despite medication and other treatments, and the resulting pain meant — in addition to

16  the limits on sitting, required position changes, use of a cane when standing and walking — that

17  she could be expected to be absent from work at least three days per month.  AR 628-632, 661.[10]

18  _____

19  [9] The Commissioner argues, somewhat differently, that remand is appropriate so that VE
testimony can "be taken to determine if Plaintiff could perform other jobs in the national

20  economy."  Cross Mot. at 9.  But in the March 2018 hearing, the ALJ did ask the VE if there were
light jobs that hypothetical claimants could perform.  AR 720-721.  The VE answered that the

21  hypothetical worker could perform some identified "light" jobs, but when the hypothetical worker
proposed by the ALJ used a cane, the VE affirmed those light jobs were no longer available.  AR

22  727.  Significantly, the ALJ did not rely on the availability of those light jobs in her second
decision.

23  [10] As Williams' treating physician, the ALJ was required to give Cheung's opinions "controlling

24  weight" so long as they are "well-supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's]

25  case record."  20 C.F.R. § 404.1527(c)(2); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).
To properly reject the opinion of a treating or examining doctor when it is uncontradicted by

26  another doctor, the ALJ must state "clear and convincing reasons" for doing so.  *Lester v. Chater*,
81 F.3d 821, 830 (9th Cir. 1995).  However, if the treating or examining physician's opinion is

27  contradicted by another physician, an ALJ may reject the treating or examining physician's
opinion if she states "specific and legitimate reasons" that are supported by substantial evidence.

28  *Id*. at 830–31.

United States District Court
Northern District of California

The ALJ gave little weight to Cheung's 2012 Medical Source Statement because it was not supported by the objective evidence and was "inconsistent with the record as a whole." AR 682. The ALJ rejected the conclusion in Cheung's 2013 statement that Williams was unable to work and had a permanent disability because that is an issue reserved to the Commissioner. AR 683. The ALJ also rejected the Cheung's 2013 opinions concerning Williams' limitations due to pain from her fibromyalgia and back pain while sitting, standing and walking, as well as his conclusion that these symptoms were largely unresponsive to treatment, because those opinions were "brief, conclusory, and inadequately supported by clinical findings." *Id.*

The Commissioner argues, first, that Williams cannot pursue this argument as she waived it by not raising it before Judge James in her first appeal under *Warren v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1007 (9th Cir. 2006). The Commissioner also defends the ALJ's discounting of Dr. Cheung's opinions because they were not supported by "objective evidence." Cross Mot. at 9-11.

Defendant's waiver argument is unsupported. In *Warren*, the Ninth Circuit addressed waiver on appeal regarding arguments not raised in the district court. 439 F.3 at 1001. *Warren* does not stand for the proposition that a claimant waives arguments regarding errors an ALJ made in a second, separate *de novo* decision denying benefits because the claimant did not raise those errors in her appeal of the ALJ's first decision. Absent case law to the contrary, Williams did not waive her challenge to the ALJ's treatment of Dr. Cheung's testimony.

Regarding the alleged lack of objective evidence supporting Dr. Cheung's opinions, Williams points out that it was undisputed that she had fibromyalgia. Dr. Cheung explained that her prognosis was "poor" and medication was not effective at controlling her pain without unacceptable side effects. AR 628, 630; *see also* 661 (2013 Dr. Cheung letter identifying fibromyalgia and back pain as a source of limitation); 636, 680-681 (Dr. Kuzis diagnosing fibromyalgia based on objective testing).[11] While the lower back pain could, arguably, be

---

[11] Williams argues, and the Commissioner does not dispute, that Drs. Cheung and Kuzis properly diagnosed the fibromyalgia following Social Security Ruling 12-2p. The result of Kuzis' test is objective medical evidence substantiating Williams' alleged severity. AR 636; see SSR 12-2p,

1     disputed as a cause of her level of pain, the fibromyalgia diagnoses and consistent treatment and

2     unsuccessful attempts to control the related pain through medication prescribed by Dr. Cheung are

3     uncontradicted objective evidence that was improperly discounted by the ALJ. *Lester*, 81 F.3d at

4     830.

5            Fibromyalgia is "diagnosed entirely on the basis of patients reports of pain and other

6     symptoms." *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004); *see also Revels*, 874 F.3d at 657

7     ("[D]iagnosis of fibromyalgia does not rely on X-rays or MRIs … after a claimant has established

8     a diagnosis of fibromyalgia, an analysis of her RFC should consider "a longitudinal record

9     whenever possible." [SSR 12-p]). "The Ninth Circuit has made it clear that when evaluating

10    "whether a claimant's residual functional capacity renders them disabled from fibromyalgia, the

11    medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic

12    methods, as described in SSR 12-2P and *Benecke*. The failure to do so is error." *Id.* at 662.

13           Since 2003, Williams' treating physicians, as well some of the examining and consulting

14    physicians relied on by the ALJ, consistently report that Williams has difficulty doing even the

15    most rudimentary of daily activities including wiping herself after a bowel movement due to pain

16    after a bowel movement, general focus, walking, sitting or standing for thirty minutes, getting out

17    of bed, light household chores, and cooking. AR 255, 269, 272, 569, 573, 575, 586, 587. Kuzis

18    found eighteen of eighteen tender points, which is seven above the threshold required by SSR 12-

19    2p to diagnose fibromyalgia, and provides objective evidence to substantiate Williams' alleged

20    severity. AR 636, 680-681; *see Revels*, 874 F.3d at 663 ("Pursuant to SSR 12-2P, tender-point

21    examinations themselves constitute "objective medical evidence" of fibromyalgia."). The pain

22    was consistently attributed in large part to her fibromyalgia. AR 575, 578, 586-588, 594-595.

23    Even Dr. Salamacha, whose opinion was given significant weight by the ALJ, recognized

24    fibromyalgia "may play a role in claimants pain patterns and symptoms." AR 274. The

25    symptoms are reported to flare and worsen over time, consistent with the characteristics of

26    fibromyalgia. AR 586-587.

27

28    _____

      Sec. IV(B).

1    The ALJ erred when determining that Dr. Cheung's opinions were not based on "objective

2    evidence" given the undisputed fibromyalgia diagnosis, treatment history, and consistent reports

3    not only from Williams herself but from her treating physician and examiners.  AR 682-683.  The

4    ALJ failed to provide "specific and legitimate reasons," much less clear and convincing reasons, to

5    discount Dr. Cheung's opinions regarding Williams' limitations.

6    Separate from my conclusion that this case should be remanded for payment of benefits

7    due to the ALJ's repeated error in not adequately addressing the conflict between VE testimony

8    and the DOT, remand for payment of benefits is also appropriate under the credit-as-true rule

9    considering Dr. Cheung's opinions.[12]

10   The decision whether to remand a case for additional evidence, or simply to award benefits

11   is "within the discretion of the court."  *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir.1987).  I

12   may remand this case for an award of benefits if:  (i) the record has been fully developed and

13   further administrative proceedings could serve no useful purpose; (ii) the ALJ has failed to provide

14   legally sufficient reasons for rejecting the evidence, whether claimant testimony or medical

15   opinion; and (iii) if the improperly discredited evidence were credited as true, the ALJ would be

16   required to find the claimant disabled on remand.  *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th

17   Cir. 2014).  If these three conditions are met, I have the discretion to award benefits unless "an

18   evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."

19   *Garrison*, 759 F.3d at 1021.  Here, the credit-as-true rule is satisfied.

20   First, there is no need to further develop the administrative record.  The Commissioner

21   argues that further proceedings would be "useful" given an unidentified "discrepancy amongst the

22   various doctors" and because the "availability of jobs in the national economy must be resolved"

23   prior to an award of benefits.  Cross Mot. at 15.  However, as I already noted the objective

24   evidence in the record is uncontradicted on Williams' diagnosis of fibromyalgia, treatment history,

25   and consistent reports that fibromyalgia was a significant source of Williams' symptoms.  *See*

26   *supra*.  The record contains the consistent reports of several treating specialists, including a

27

28   ───────────────────
     [12] I need not, therefore, consider Williams' additional and well-taken arguments that the ALJ
     improperly discounted Williams' and her husband's subjective testimony.

United States District Court
Northern District of California

1    rheumatology specialist, and Williams' treating physician of over fifteen years.  AR 575, 578,

2    586-588, 594-595.

3         Additionally, the lack of availability of jobs has already been addressed in two hearings,

4    based on Williams' undisputed limitations (but not considering the *further* limitations supported

5    by Dr. Cheung's improperly discounted opinions).  In those hearings the ALJ had the VE confirm

6    Williams would not be able to perform a range of light work given her use of a cane (AR 727).

7    The VE was, as noted, equivocal at best on Williams' ability to perform her former customer

8    service representative position when considering the required sit/stand option.  There is no

9    justification for requiring further VE testimony.  *Garrison*, 759 F.3d at 1021-1022; *see also*

10   *Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide this issue again would create an

11   unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *M.D.B.*

12   *v. Berryhill,* No. 19-CV-02435-LB, 2020 WL 4051863, at *10 (N.D. Cal. July 20, 2020) (remand

13   for an award of benefits, where the case had already been remanded to the ALJ once before and, in

14   a second decision, the ALJ erroneously discredited treating physician opinions and erroneously

15   determined work was available).

16        The ALJ failed to provide a legally sufficient reason to reject the testimony of Dr. Cheung.

17   Crediting the improperly discredited testimony of Dr. Cheung as true, it is clear that the ALJ

18   would be required to find Williams disabled.  *See Reddick v. Chater*, 157 F.3d 715, 729 (remand

19   for an immediate award of benefits where VE testimony established that the claimant could not

20   perform her previous job when severity of her symptoms were credited as true).  Reviewing the

21   record as a whole, there are "no outstanding issues that must be resolved before a determination of

22   disability can be made." *Garrison*, 759 F.3d at 1019, n.26.  All credit-as-true factors are satisfied

23   and there is "no reason to seriously doubt" Williams is disabled.  *Id.* at 1023.

                                   **CONCLUSION**

25        Plaintiff's motion for summary judgment is GRANTED and the Commissioner's cross

26   motion is DENIED.  This case is remanded solely for the determination of the appropriate

United States District Court
Northern District of California

payment of benefits.

**IT IS SO ORDERED.**

Dated: March 16, 2021



William H. Orrick
United States District Judge